IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION
_____

| | | |
|---|---|---|
| BRANDON COFFMAN, | * | |
| | * | |
| **Plaintiff,** | * | CIVIL ACTION FILE NO. |
| | * | |
| VERSUS | * | **4:18-CV-00022-HLM** |
| | * | |
| HARRY DALLAS BATTLE, in his | * | |
| individual capacity; JOHN DOE 1-5, | * | |
| in his or her individual capacity, | * | |
| | * | |
| **Defendants.** | * | |

## BRIEF IN SUPPORT OF DEFENDANT BATTLE'S MOTION FOR SUMMARY JUDGMENT

COMES NOW Defendant Battle, the only named Defendant in this action, pursuant to Fed. R. Civ. P. 56, and makes this his Brief in Support of his Motion for Summary Judgment, and respectfully shows this Honorable Court the following, to-wit:

## I.  FACTUAL ALLEGATIONS

For the sake of brevity, Defendant Battle incorporates herein his Statement of Material Facts as to Which There is No Genuine Issue to be Tried, as if it were set forth herein verbatim. See Vinnett v. Gen. Elec. Co., 271 Fed. Appx. 908, 915 (11th Cir. 2006) (holding that it is not an abuse of discretion to permit a party to

"incorporate its statement of undisputed material facts in its supporting brief when the district court's local rules require [movant] to file the statement along with its motion for summary judgment").

## II. ARGUMENT AND CITATION OF AUTHORITY

### A. Standard Of Review.

Federal Rule of Civil Procedure 56(a) requires a court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party seeking summary judgment bears the initial burden of demonstrating that no dispute as to any material fact exists. See Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); Bingham, Ltd. v. United States, 724 F.2d 921, 924 (11th Cir. 1984). This burden is discharged merely by "'showing'—that is, pointing out to the District Court—that there is an absence of evidence to support [an essential element of] the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The Court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. See Bradbury v. Wainwright, 718 F.2d 1538, 1543 (11th Cir. 1983). Once the movant has adequately supported its motion, the burden shifts to the nonmoving party to establish that summary judgment is improper under these

facts. See Davis v. Postmaster Gen., 550 Fed. Appx. 777, 778 (11th Cir. 2013). To satisfy this burden, the nonmovant must come forward with specific facts showing a genuine dispute. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

The materiality of a fact is determined by the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Facts that in good faith are disputed, but which do not resolve or affect the outcome of the suit do not preclude the entry of summary judgment. Id. Genuine disputes are those by which the evidence is such that a reasonable jury could return a verdict for the nonmovant. Id. at 248. The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts.… Where the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586.

## B. Defendant Battle is Entitled to Qualified Immunity on Plaintiff's Excessive Force Claim.

### 1. Qualified Immunity Generally.

This Court should grant summary judgment in favor of Defendant Battle on Plaintiff's excessive force claim because he is entitled to qualified immunity. Because this defense holds a defendant immune from trial or even participation in

discovery, it is especially important for the District Court to rule on these motions on a pretrial basis. Anderson v. Creighton, 483 U.S. 635, 640 n.2 (1987); Mitchell v. Forsyth, 472 U.S. 511, 526 (1985); Harlow v. Fitzgerald, 457 U.S. 800, 817-18 (1982); Ansley v. Heinrich, 925 F.2d 1339, 1347 (11th Cir. 1991).

The Eleventh Circuit applies a two-part analysis to determine whether a defendant is entitled to qualified immunity. Crawford v. Carroll, 529 F.3d 961, 977 (11th Cir. 2008). Under this test, Defendant Battle first must prove that his allegedly unconstitutional conduct occurred while he was acting within the scope of his discretionary authority. Al-Amin v. Smith, 511 F.3d 1317, 1324 (11th Cir. 2008). Once Defendant Battle shows he acted within his discretionary authority, the burden shifts to Plaintiff to show that (1) Defendant Battle's conduct violated the Plaintiff's constitutional right(s) and (2) that the constitutional right(s) violated was "clearly established." Id. at 1324. If Plaintiff cannot make either of those showings, Defendant Battle is entitled to qualified immunity. Franklin v. Curry, 738 F.3d 1246, 1249 (11th Cir. 2013).

A right is clearly established for qualified immunity purposes if "(1) case law with indistinguishable facts clearly establish[es] the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law . . . clearly

establishes a constitutional right; or (3) conduct [was] so egregious that a constitutional right was clearly violated, even in the total absence of case law." Lewis v. City of West Palm Beach, 561 F.3d 1288, 1291-92 (11th Cir. 2009) (citations omitted); see also Vinyard v. Wilson, 311 F.3d 1340, 1350-352 (11th Cir. 2002). "[F]or a right to be clearly established, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (some internal quotation marks omitted). A defendant is thus to be deemed immune unless it can be established that the defendant was either "plainly incompetent" or "knowingly violated the law." Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2085 (2011); Stanton v. Sims, 134 S. Ct. 3, 5 (2013) (per curiam).

**2. Defendant Battle was Acting Within His Discretionary Authority at All Times Pertinent to Plaintiff's Action.**

Defendant Battle was acting within his discretionary authority at all times pertinent to this case. See Evans v. Hightower, 117 F.3d 1318, 1320 (11th Cir. 1997). To establish that the challenged actions were within the scope of his discretionary authority, Defendant Battle must show, by competent summary judgment materials, that his actions were (a) undertaken in the performance of his duties, and (b) within the scope of his authority. Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1282 (11th Cir. 1998). The inquiry is not whether it was within

5

Defendant Battle's authority to commit the allegedly wrongful acts. Id. Rather, the proper inquiry is whether, if done for a proper purpose, the actions complained of would be within, or reasonably related to, the outer perimeter of his discretionary duties. Id.

In the present matter, it is undisputed that Defendant Battle was, at all material times, a Sergeant employed by the Polk County Sheriff and working in the Polk County Jail. In that position, Defendant Battle was responsible for supervising officers working at the Jail on that shift and was responsible for ensuring the security of the Jail, the safety of the inmates, and that inmates and staff complied with the policies in place at the Jail. DSMF at ¶¶ 1-2. Thus, for purposes of qualified immunity, Defendant Battle was acting within his discretionary authority.

**3. Defendant Battle Did Not Violate Any Clearly Established Constitutional Right.**

Plaintiffs must satisfy a two-prong test to defeat Defendant Battle's claim to qualified immunity. He must show (1) Defendant Battle violated a constitutional right, and (2) the constitutional right was clearly established at the time of the violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). The Supreme Court has withdrawn the requirement of strict adherence to the Saucier protocol. Pearson v. Callahan, 555 U.S. 223, 236 (2009). In the interest of completeness, however,

Defendant Battle will address both prongs of the <u>Saucier</u> analysis with regard to Plaintiff's excessive force claim.

### *i. No Constitutional Violation*

Plaintiff's excessive force claim is governed by the Fourteenth Amendment because Plaintiff had been in the physical custody of Jail staff for several weeks at the time the alleged incident occurred, and Plaintiff was plainly a pretrial detainee. In its decision in <u>Kingsley v. Hendrickson</u>, 576 U.S. ___, 135 S. Ct. 2466 (2015), the United States Supreme Court ruled that plaintiffs bringing excessive force claims under the Fourteenth Amendment no longer have to establish the subjective intent of the defendant officers. Instead, plaintiffs have to show the use of force was objectively unreasonable. In order to determine if the use of force was objectively reasonable,

> Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting. We do not consider this list to be exclusive. We mention these factors only to illustrate the types of objective circumstances potentially relevant to a determination of excessive force.

<u>Kingsley</u>, 576 U.S. at ___, 135 S. Ct. at 2743 (2015) (citations omitted).

7

One court has provided the following description of Tasers:

A Taser has three main modes of deployment: probe, drive-stun, and three-point. In each mode, some part of a person's body is used to complete an electric circuit. The sensations and consequences of the weapon vary depending on how the circuit is completed.

Probe mode is what many people envision when they think of use of a Taser. In probe mode, two electrically charged probes are shot into a person's body, so that an electric current runs through the entire body. This causes neuromuscular incapacitation. In other words, the person loses control over her own body because her muscles and nerves are entirely occupied with completing the circuit. If an individual is struggling with the police or otherwise presents a danger, the neuromuscular incapacitation can create a window in which the individual will stop resisting and can be secured. Probe mode also causes "intense [pain], felt throughout the body."

.… In drive-stun mode, the probes are taken off the Taser so only fixed electrodes remain. The electrodes are able to complete a circuit through the air, showing an arc of lightning-like electricity. When touched to a person's body, the circuit is completed through the top layer of skin and fat, leading to an extremely painful burning sensation.… [D]rive-stun mode causes only pain and not incapacitation. In drive-stun mode, a Taser is "a pain compliance tool with limited threat reduction." In other words, because it does not incapacitate an individual, it will not be as effective at ending a struggle, but it can cause an individual to comply with police orders by causing pain.… [D]rive-stun mode does not cause lasting injury, beyond temporary burn marks.

Finally, three-point mode is the name for when an officer uses a Taser in both probe mode and drive-stun mode at the same time, incapacitating a person and causing her extra pain.

Andrews v. Williams, 2015 U.S. Dist. LEXIS 132015 at \*4-\*6 (M.D. Ala. Sep. 30, 2015) (citations omitted). See also Draper v. Reynolds, 369 F.3d 1270, 1273 n.3 (11th Cir. 2004); Oliver v. Fiorino, 586 F.3d 898, 903 (11th Cir. 2009) (citations omitted); Hoyt v. Cooks, 672 F.3d 972, 975 n.4 (11th Cir. 2012) (citation omitted).

With regard to excessive force claims arising from the use of Tasers in prong mode, the Eleventh Circuit has set forth the basic general rule:

> This Court has held that "the use of a taser gun to subdue a suspect who has repeatedly ignored police instructions and continues to act belligerently toward police is not excessive force." This is because, "where a suspect appears hostile, belligerent, and uncooperative, use of a taser might be preferable to a physical struggle causing serious harm to the suspect or the officer." On the other hand, unprovoked taser use "against a non-hostile and non-violent suspect who has not disobeyed instructions violates that suspect's rights under the Fourth Amendment." For example, this Court has held that taser use crossed the line and became excessive where the officer tasered a resisting suspect not once—which the plaintiff conceded would have been justified—but up to a dozen times over two minutes.

Smith v. LePage, 834 F.3d 1285, 1294 (11th Cir. 2016) (citations omitted). But, to Defendant's knowledge, **the Eleventh Circuit has never decided an excessive force case where the _only_ force used on the plaintiff was a Taser in drive stun mode**.

In the circumstances facing him, Defendant Battle's use of force was

9

reasonable. First, Defendant Battle resorted to using the Taser in drive stun mode after other attempts, using lesser force, were unsuccessful in getting Plaintiff to stop his disruptive behavior. There can be no dispute that Plaintiff was engaging in disruptive behavior at the Jail. DSMF at ¶¶ 21, 29, 33, 35, 38. The following circumstances demonstrate that Battle's use of the Taser in drive stun mode on Plaintiff was reasonable:

- Plaintiff had first been given numerous verbal warnings to stop his disruptive behavior of kicking the cell door and yelling, but he did not stop (DSMF at ¶ 24);

- Battle then placed Plaintiff on lockdown status by taking away some of Plaintiff's privileges and Plaintiff's disruptive behavior did not stop (DSMF at ¶ 36);

- Battle attempted to Tase Plaintiff in prong mode one time (DSMF at ¶ 44);[1]

- Plaintiff was placed in a restraint chair and his behavior worsened because he flooded two different cells (DSMF at ¶¶ 54, 55, 60);

- Plaintiff was able at will to remove his left wrist from the restraint and he did so while in the suicide cell (DSMF at ¶ 76);

- Plaintiff used his unrestrained arm to loosen the restraints on Wilson's restraint chair (DSMF at ¶ 77);

- Battle and Hudson had been advised that Plaintiff "was out of his

---

[1] One of the prongs missed Plaintiff. Thus, the circuit was not completed and the Taser was ineffective against Plaintiff. DSMF at ¶ 46.

chair" and both had been called to the booking area to get Plaintiff back in his chair (DSMF at ¶ 73);

- Battle drive stunned Plaintiff two times (DSMF at ¶ 81);

- Plaintiff did not cause any more trouble that night (DSMF at ¶ 88);

- Battle did not use any more force on Plaintiff that night (DSMF at ¶ 89);

- Having to deal with Plaintiff's behavior multiple times kept Battle and other officers from performing other duties (DSMF at ¶ 96).

Battle used the Taser in drive stun mode to get Plaintiff to stop his disruptive behavior. Battle's use of the Taser on Plaintiff accomplished that goal. **Defendant Battle concedes that using the Taser in drive stun mode was the greatest amount of force he could have used on Plaintiff in those circumstances**. Based on these considerations, Battle's use of the Taser on Plaintiff in drive stun mode was a reasonable response to Plaintiff's continued disruptive and non-compliant behavior.

Second, under no reasonable definition could Plaintiff have been considered "secured." The English Oxford Dictionaries defines "secure" (as an adjective) to mean "fixed or fastened so as not to give way, become loose, or be lost." As a verb, "secure" means "fix or attach (something) firmly so that it cannot be moved or lost." https://en.oxforddictionaries.com/definition/secure.   Dictionary.com

defines "secure" (as an adjective) to mean "dependable; firm; not liable to fail, yield, become displaced, etc., as a support or a fastening." As a verb, "secure" means "to make firm or fast, as by attaching." https://www.dictionary.com/browse/secure.

Under none of these definitions could Plaintiff reasonably have been considered "secure." When an inmate in a restraint chair is able to free one of his arms at will, it strains reason to claim that inmate is "secure." Plaintiff had his wrist in the strap when Battle and Hudson came inside the suicide cell. But, he could have removed it and used his arm offensively at any time. Indeed, when Battle drive stunned Plaintiff the second time, Plaintiff removed his wrist and slapped the Taser away from his body. Before the officers had entered the cell, Plaintiff had removed his left arm from the restraint and used it to loosen the straps on Wilson's chair. Battle had been advised by another officer that Plaintiff was out of his chair. That was the whole reason for Battle and Hudson going into the suicide cell, to fully restrain Plaintiff in the chair.

Third, the Eleventh Circuit has consistently found that de minimis force does not defeat an officer's qualified immunity in an excessive force case. See Durruthy v. Pastor, 351 F.3d. 1080, 1094 (11th Cir. 2003) (grabbing plaintiff from behind,

forcing plaintiff to ground and cuffing); <u>Vinyard v. Wilson</u>, 311 F. 3d 1340 (11th Cir. 2002) (grabbing plaintiff's arms, jerking her out of chair, cuffing behind back and being dragged into jail by her shirt, arm or hair); <u>Rodriguez</u>, 280 F.3d at 1351 (grabbing plaintiff's arm, twisting it around his back, jerking it up high to the shoulder and then handcuffing plaintiff as he fell to his knees screaming that the officer was hurting him); <u>Nolin v. Isbell</u>, 207 F. 3d 1253, 1255 (11th Cir. 2000) (grabbing plaintiff from behind by shoulder and wrist, throwing him against a van three or four feet away, kneeing him in the back, pushing his head into the side of the van, searching groin in an uncomfortable manner, and cuffing him); <u>Jones v. City of Dothan</u>, 121 F. 3d 1456 (11th Cir. 1997) (slamming plaintiff against a wall and kicking his legs apart, even when force aggravated previous condition from a stroke and arthritic knee).

The cases recognize, on the one hand, "the use of gratuitous force when a suspect is not resisting arrest violates the Fourth Amendment," but, on the other hand, "'the application of <u>de minimis</u> force, without more, will not support an excessive force claim' and 'will not defeat an officer's qualified immunity.'" <u>Horn v. Barron</u>, 720 Fed. Appx. 557, 563 (11th Cir. 2018) (quoting <u>Nolin</u>, 207 F.3d at 1257-58).

Moreover, "[a]lthough being struck by a taser gun is an unpleasant experience" <u>Draper v. Reynolds</u>, 369 F.3d 1270, 1278 (11th Cir. 2004), it does not necessarily result in more than a <u>de minimis</u> injury. <u>See</u>, <u>e.g.</u>, <u>Lacross v. City of Duluth</u>, 2012 U.S. Dist. LEXIS 66681, *36-37 (D. Minn. May 14, 2012) ("The use of the Taser, in and of itself, is not more than <u>de minimis</u> injury.") (citing <u>Cook v. City of Bella Villa</u>, 582 F.3d 840, 850 (8th Cir. 2009) (citing Draper, 369 F.3d at 1278)). <u>See also</u> <u>Teal v. Campbell</u>, 2012 U.S. Dist. LEXIS 137958, *13 (M.D. Fla. Sep. 26, 2012).

In the present matter, Defendant Battle's using the Taser on Plaintiff in drive stun mode was nothing more than <u>de minimis</u> force. Moreover, Plaintiff's purported injury was <u>de minimis</u>. Plaintiff's alleged injury was four small burn marks on his abdomen. That alleged injury certainly does not indicate that Plaintiff had been subjected to excessive force.

For all of these reasons, Plaintiff's cannot show that his constitutional rights were violated.

### *ii. No violation of clearly established law*

Two inquiries are pertinent to this issue: (1) "'whether the violative nature of particular conduct is clearly established'"; and (2) "whether existing precedent

placed the conclusion that Defendant Battle acted unreasonably in these circumstances "'beyond debate.'" <u>Mullenix v. Luna</u>, 136 S. Ct. 305, 308 (2015) (quoting <u>al-Kidd</u>, 563 U.S. at 741-42). The answer to both inquiries is no.

"There is no reported Eleventh Circuit case which considered the use of a Taser in only drive-stun mode. All of the Eleventh Circuit's published decisions involved probe mode, a significantly more intrusive and painful experience." <u>Andrews</u>, 2015 U.S. Dist. LEXIS 132015 at *16. <u>See also</u> <u>Wate v. Kubler</u>, 839 F.3d 1012, 1017 (11th Cir. 2016) (probe mode); <u>Smith</u>, 834 F.3d at 1290, 1291 (probe mode); <u>Fils v. City of Aventura</u>, 647 F.3d 1272, 1277 (11th Cir. 2011); <u>Hoyt</u>, 672 F.3d 972, 975-76 (11th Cir. 2012) (probe mode and drive stun mode); <u>Mann</u>, 588 F.3d at 1300 (probe mode); <u>Oliver</u>, 586 F.3d 898, 902-03 (11th Cir. 2009) (probe mode); <u>Draper</u>, 369 F.3d 1270, 1273 (11th Cir. 2004) (probe mode). Accordingly, there are no cases with materially similar facts that clearly established that the Battle's conduct was unconstitutional.

In addition, the force used on the decedent was not unconstitutional as a matter of obvious clarity. As the Eleventh Circuit has explained:

> Our case law has made clear that "obvious clarity" cases will be rare. This is because "[p]ublic officials are not obligated to be creative or imaginative in drawing analogies from previously decided cases." "A reasonable official's awareness of the existence of an abstract right …

> does not equate to knowledge that his conduct infringes the right.
> Thus, [i]f case law, in factual terms, has not staked out a bright line,
> qualified immunity almost always protects the defendant." "We have
> noted that it would be inappropriate to hold government officials to a
> higher level of knowledge and understanding of the legal landscape
> than [that] displayed by judges whose everyday business it is to
> decipher the meaning of judicial opinions."

Coffin v. Brandau, 642 F.3d 999, 1015 (11th Cir. 2011) (en banc) (citations omitted). The cases cited above, particularly those granting qualified immunity indicate that this case is not one of obvious clarity. Compare Oliver, 586 F.3d at 907-08 (finding that officer's conduct in tasing the decedent as many as 12 times in prong mode violated the constitution as matter of obvious clarity) with Hoyt, 672 F.3d at 980 (granting qualified immunity to officers who tased the plaintiff once in prong mode and 5 times in drive stun mode). In this case Defendant Battle tased Plaintiff two times in drive stun mode, which is considerably less force that using a Taser in prong mode several times on a suspect. Accordingly, Defendant Battle's conduct was not unconstitutional as a matter of obvious clarity.

In the present case, Plaintiff, who had been engaging in disruptive conduct for more than one hour, was tased in drive stun mode two times. There are no cases with materially similar facts denying qualified immunity to an officer in these circumstances. See Smith, 834 F.3d at 1294.

For all of these reasons, Defendant Battle did not violate clearly established law and he is entitled to qualified immunity in this case.

## C. Defendant Battle is Entitled to Summary Judgment on Plaintiff's State Law Claims.

Plaintiff's state law claims against Defendant Battle fail as a matter of law, thus entitling him to summary judgment on said claims.

### 1. Defendant Battle is Entitled to Official Immunity

Defendant Battle is entitled to official immunity on Plaintiff's state law claims. Pursuant to the official immunity doctrine, a public officer may be held liable for the negligent performance of ministerial acts, but may not be held liable for the negligent performance of discretionary acts unless such acts are willful, wanton, or outside the scope of his authority. Gilbert v. Richardson, 264 Ga. 744, 752 (1994). The rationale for this immunity is to preserve the public employee's independence of action without fear of lawsuits and to prevent a review of his or her judgment in hindsight. Todd v. Brooks, 292 Ga. App. 329 (2008). Whether the acts upon which liability is predicated are ministerial or discretionary is based on the character of the specific actions complained of, and is to be determined from the facts of each case. Banks v. Happoldt, 271 Ga. App. 146, 149 (2006); Clive v. Gregory, 280 Ga. App. 836, 842 (2006), aff'd, 282 Ga. 476 (2007).

17

With regard to identifying ministerial acts, the Georgia Supreme Court has stated:

> "Generally, a discretionary act is one that requires the examination of facts and the exercise of considered judgment before deciding on a course of action, whereas a ministerial act is one that is a mandatory fixed obligation for which mandamus will lie to compel performance."
>
>> A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act, however, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed.

Common Cause/Georgia v. City of Atlanta, 279 Ga. 480, 482 (2005) (citations omitted). "Where there is an established policy requiring an official to take specified action in a specified situation, the policy creates a ministerial duty on the part of the official to perform the specified task." Grammens v. Dollar, 287 Ga. 618, 620 (2010) (citations omitted).

If the acts at issue are discretionary, Defendant Battle can be held liable only if he performed said acts with actual malice or intent to cause injury in the performance of his official functions. Selvy v. Morrison, 292 Ga. App. 702, 704-05 (2008) (footnotes omitted). In addition,

[t]he phrase "actual intent to cause injury" has been defined in a tort context to mean an actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury. This definition of intent contains aspects of malice, perhaps a wicked or evil motive.

Kidd v. Coates, 271 Ga. 33 (1999) (citations omitted).

Supervising inmates is a discretionary act. See Middlebrooks v. Bibb Cnty., 261 Ga. App. 382, 387 (2003). That being the case, Plaintiff can recover against Defendant Battle on his state law claims only if Defendant Battle acted with actual malice towards Plaintiff or acted with intent to cause Plaintiff the harm he allegedly experienced.

As discussed above with regard to Plaintiff's federal claims, there is no evidence in the record which indicates that Defendant Battle intended to perform an unlawful act or that he acted with a deliberate intention to cause Plaintiff injury.

## 2. Plaintiffs' State Law Claims Against Deputy Battle Fail on Their Merits.

Plaintiff's State law claims also fail on their merits.

### i. Battery

O.C.G.A. § 51-1-13 provides as follows: "A physical injury done to another shall give a right of action to the injured party, whatever may be the intention of the person causing the injury, unless he is justified under some rule of law.

However, intention shall be considered in the assessment of damages." Similarly, O.C.G.A. § 51-1-14 provides as follows: "Any violent injury or illegal attempt to commit a physical injury upon a person is a tort for which damages may be recovered."

However, Deputy Battle's use of force against Plaintiff was legally justified. As discussed <u>supra</u> with regard to Plaintiffs' Fourteenth Amendment claim, Defendant Battle's use of force was justified as a reasonable measure to get Plaintiff to stop his disruptive behavior.

### ii. Intentional Infliction of Emotional Distress

The elements of a cause of action for intentional infliction of emotional distress are: (1) intentional or reckless conduct; (2) that is extreme and outrageous; (3) a causal connection between the wrongful conduct and the emotional distress; and (4) severe emotional distress. <u>Ferrell v. Mikula</u>, 295 Ga. App. 326, 333 (2008). "'Liability [for this tort] has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" <u>Yarbrough v. SAS Sys., Inc.</u>, 204 Ga. App. 428, 429 (1992) (alteration in original). With regard to the severe emotional distress

element, the Georgia Court of Appeals has explained:

> "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."
>
> > Emotional distress includes all highly unpleasant mental reactions such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea. It is only where it is extreme that liability arises. The law intervenes only where the distress inflicted is so severe that no reasonable person could be expected to endure it. Whether severe emotional distress can be found, based on the evidence presented, is a question for the court to decide.
>
> Here, the trial court concluded that based on Jones's testimony that she suffered "anxiety, nervousness, sleeplessness, and irritability" for one month after the arrest, as well as her failure to seek medical or psychiatric treatment for these symptoms, Jones could not show that her symptoms were sufficiently severe. There was no error. Abdul-Malik [v. AirTran Airways, 297 Ga. App. 852, 858 (1) (1988)] (emotional distress claim fails where plaintiff did not have symptoms "so severe that no reasonable person could be expected to endure [them]"); Odem v. Pace Academy, 235 Ga. App. 648, 656 (2) (1998) (where plaintiff suffered "marginally high" blood pressure but sought no professional advice, emotional distress was not severe); Witter v. Delta Airlines, 966 F. Supp. 1193, 1201 (N.D. Ga. 1997), aff'd, 138 F3d 1366 (11th Cir. 1998) (anxiety, sleeplessness, overeating, diarrhea, and headaches did not amount to "severe" emotional distress).

Jones v. Warner, 301 Ga. App. 39, 42-43 (2009) (some citations omitted).

In the present matter, Battle's conduct was not severe enough to be

considered extreme or outrageous. Tasing Plaintiff in drive stun mode is not "'conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" <u>Yarbrough</u>, 204 Ga. App. at 429. In addition, Plaintiff merely alleges he experiences fear and anxiety and "PTSD-type" symptoms. Doc. 1 at ¶ 25. This is plainly insufficient to satisfy the severe emotional distress element. In addition, Plaintiff admitted in his interrogatory responses that he has not received any medical treatment for his alleged emotional distress. Ex. B at 5 (resp. to int. no. 9). Accordingly, Plaintiff's purported emotional distress was not sufficiently severe for purposes of his IIED claim. Consequently, Plaintiff's intentional infliction of emotional distress claim fails as a matter of law.

### III. CONCLUSION

Based upon the above and foregoing, this Court should enter judgment in favor of Defendant Battle as to all of Plaintiff's claims.

RESPECTFULLY SUBMITTED,

WOMACK, GOTTLIEB & RODHAM, P.C.

*/s/ Ronald R. Womack*
GEORGIA BAR NO. 773650

                                        _/s/ Steven M. Rodham_
                                        GEORGIA BAR NO. 611404

109 EAST PATTON AVENUE
P. O. BOX 549
LAFAYETTE, GEORGIA 30728
706/638-2234
                                        ATTORNEYS FOR DEFENDANT
                                        BATTLE

<u>**CERTIFICATION OF COUNSEL**</u>

The undersigned pursuant to this Court's Local Rules hereby certifies that this document has been prepared with Times New Roman 14 point.

THIS 28th DAY OF NOVEMBER, 2018.

WOMACK, GOTTLIEB & RODHAM, P.C.

*/s/ Steven M. Rodham*
GEORGIA BAR NO. 611404

P. O. BOX 549
109 EAST PATTON AVENUE
LAFAYETTE, GEORGIA 30728
706/638-2234

OF COUNSEL FOR DEFENDANT
BATTLE

## <u>CERTIFICATE OF SERVICE</u>

THIS IS TO CERTIFY that on November 28, 2018, I electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorney of record:

       Harry Daniels, Esq.

                       WOMACK, GOTTLIEB & RODHAM, P.C.

                       */s/ Steven M. Rodham*
                       GEORGIA BAR NO. 611404

P. O. BOX 549
109 EAST PATTON AVENUE
LAFAYETTE, GEORGIA 30728
706/638-2234

                       OF COUNSEL FOR DEFENDANT
                       BATTLE