IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

BRANDON COFFMAN,

    Plaintiff,

v.

HARRY DALLAS BATTLE,
in his individual capacity;
JOHN DOE 1-5,
in his or her individual capacity,

    Defendants.

CIVIL ACTION FILE NO.
4:18-CV-00022-HLM

## ORDER

This case is before the Court on the Motion for

Summary Judgment filed by Defendant Harry Dallas Battle

("Defendant") [21], and on the Motion for Summary

Judgment filed by Plaintiff Brandon Coffman ("Plaintiff") [25].

# I.    Background

Keeping in mind that, when deciding a motion for summary judgment, the Court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion, the Court provides the following statement of facts.  Strickland v. Norfolk S. Ry. Co., 692 F.3d 1151, 1154 (11th Cir. 2012).  This statement does not represent actual findings of fact.  Rich v. Sec'y, Fla. Dep't of Corr., 716 F.3d 525, 530 (11th Cir. 2013).  Instead, the Court has provided the statement simply to place its legal analysis in the context of this particular case or controversy.

As required by the Local Rules, Defendant filed a Statement of Material Facts in support of his Motion for Summary Judgment ("DSMF"). (Docket Entry No. 21-1.)

AO 72A
(Rev.8/8
2)

Plaintiff filed a response to DSMF ("PRDSMF"). (Docket Entry No. 27-1.)

Plaintiff also filed a Statement of Material Facts in support of his own Motion for Summary Judgment ("PMSF"). (Docket Entry No. 25-1.) Defendant filed a response to PSMF ("DRPSMF"). (Docket Entry No. 29.)

The Court addresses DSMF, PRDSMF, PSMF, and DRPSMF below. Where one party has objected to a proposed fact, and the Court does not explicitly discuss the objection, that party can conclude that the Court has overruled the objection. If the Court does not reference a proposed fact or the substance of a proposed fact, the parties can conclude that the Court has found the proposed fact immaterial or unsupported.

3

AO 72A
(Rev.8/8
2)

## A. Factual Background

The incidents at issue in this case occurred in the early hours of July 7, 2016. (DSMF ¶ 19; PSMF ¶ 1.) On that date, Plaintiff was a pretrial detainee in custody of the Polk County Jail ("the Jail"). (DSMF ¶ 16; PSMF ¶ 1.) Defendant was then employed by the Polk County Sheriff's Office as a deputy sheriff with the rank of sergeant. (DSMF ¶ 1; PSMF ¶ 2.)

On July 6, 2016, Defendant was assigned to work the night shift at the Jail. (DSMF ¶ 6; PSMF ¶ 4.) Another deputy sheriff, Officer Jadin Hudson, also worked the night shift on that date. (DSMF ¶ 10; PSMF ¶ 4.) The night shift began at 7:00 p.m. and ended at 7:00 a.m. (DSMF ¶ 6;

4

PSMF ¶ 4.) Defendant and Officer Hudson were both equipped with tasers. (DSMF ¶ 10; PSMF ¶ 5.)

At the start of the night shift on July 6, 2016, Plaintiff was housed in one of the Jail's side cells. (DSMF ¶ 16; PSMF ¶ 6.) The side cells are single-occupant cells located in the Jail's booking area. (DSMF ¶ 13; PSMF ¶ 6.) Two other individuals, Inmate Wilson and Inmate Billingsley, were also housed in side cells at that time. (DSMF ¶ 23; PSMF ¶ 7.) Plaintiff's cell was S-10, Inmate Wilson's cell was S-11, and Inmate Billingsley's cell was S-08. (Id.)

At one point during their shift, Defendant and Officer Hudson heard disruptive noises and yelling coming from the direction of cells S-10, S-11, and S-08. (DSMF ¶ 21; PSMF ¶ 8.) According to Officer Hudson, Defendant warned the

AO 72A
(Rev.8/8
2)

inmates in response that he would come to their cells and place them in restraint chairs if they did not stop. (DSMF ¶ 24.) Restraint chairs are equipped with belt-like restraints for an inmate's wrists, ankles, and shoulders. (DSMF ¶ 27.) They are used to protect inmates from themselves, as well as to hold and discipline inmates who do not comply with jail rules and policies. (DSMF ¶¶ 25-26.)

Eventually, in response to the noise, Defendant and Officer Hudson placed Inmate Wilson in a restraint chair. (DSMF ¶ 30.) Defendant and Officer Hudson also moved Inmate Wilson from S-11 to the "SCC" cell. (Id.) The SCC cell is larger than the side cells and is closer to the booking desk, thereby allowing officers to keep a closer eye on inmates. (DSMF ¶¶ 31-32.)

AO 72A
(Rev.8/8
2)

After the officers moved Inmate Wilson, Plaintiff continued to yell and kick his cell doors. (DSMF ¶ 33; PSMF ¶ 10.) Defendant and Officer Hudson responded by placing Inmate Billingsley in a restraint chair as well. (DSMF ¶ 34.) Plaintiff then resumed kicking his cell door and shouted that he was going to flood his cell. (DSMF ¶ 35; PSMF ¶ 10.) This prompted Defendant and Officer Hudson to respond to Plaintiff's cell. (DSMF ¶¶ 38-39; PSMF ¶ 10.)

Around 12:12 a.m., Officer Hudson opened the door to Plaintiff's cell for Defendant. (DSMF ¶ 44; PSMF ¶ 11; Video of Main Hall at 12:12:15.) Defendant then deployed his taser toward Plaintiff in "prong mode." (DSMF ¶ 44; PSMF ¶ 11; Video of Main Hall at 12:12:17.) Because one

AO 72A
(Rev.8/8
2)

of the taser's prongs missed Plaintiff's body, however, the taser was ineffective.  (DSMF ¶¶ 46, 48.)

After deploying his taser, Defendant removed Plaintiff from S-10 and ordered him to lay down in the hallway. (DSMF ¶ 47; PSMF ¶ 13; Video of Main Hall at 12:13:10-12:14:40.)  Plaintiff complied.  (Id.) Defendant then placed Plaintiff back in the cell and said that would come back and "kick Plaintiff's ass" if Plaintiff made any more noise.  (PSMF ¶ 14; Pl.'s Ex. 1 (Docket Entry No. 22-1) at 9-10.[1])  Plaintiff

---

[1]     Plaintiff's version of the facts relies heavily on an investigative report compiled by Special Agent Earl Glover. That report, in turn, relies substantially on Officer Hudson's account of these events.  Defendant therefore objects to Plaintiff's statement of facts as inadmissible hearsay.
    The Court recognizes that Special Agent Glover's report is itself hearsay.  A district court may consider hearsay statements in evaluating a motion for summary judgment, however, "if the statement could be reduced to

AO 72A
(Rev.8/8
2)

alleges that he then became upset and asked Defendant why he had fired his taser. (PSMF ¶ 16; Pl.'s Ex. 1 at 10.) This question prompted Officer Hudson to reopen Plaintiff's cell, at which point Officer Hudson tased Plaintiff. (DSMF ¶ 52; PSMF ¶ 17.)

---

admissible evidence at trial or reduced to admissible form." Jones v. UPS Ground Freight, 683 F.3d 1283, 1293–94 (11th Cir. 2012) (quoting Macuba v. Deboer, 193 F.3d 1316, 1322 (11th Cir. 1999)).

Plaintiff may reduce the contents of the report to admissible form by calling Officer Hudson at trial. At that point, Officer Hudson's account would no longer be hearsay. This includes his recollection of Defendant's statements. See Fed. R. Evid. 801(2) (defining "hearsay" to exclude statements "offered against an opposing party," and "made by th[at] party in an individual or representative capacity").

Accordingly, the Court considers Special Agent Glover's investigative report when ruling on the Parties' Motions for Summary Judgment.

AO 72A
(Rev.8/8
2)

Sometime around 12:17 a.m., Plaintiff admitted to either Defendant or Officer Hudson that it was he, not Inmate Billingsley, who had been kicking his cell door and shouting. (DSMF ¶ 55; PSMF ¶ 18.) The officers therefore released Inmate Billingsley from his restraint chair and placed Plaintiff in a restraint chair instead. (DSMF ¶ 56; PSMF ¶ 18.) Plaintiff was able to remove his left arm from its restraints, however, and he proceeded to flood his cell by overflowing a toilet. (DSMF ¶¶ 57-58; PSMF ¶ 19.)

In response to the flooding, Defendant and Officer Hudson removed Plaintiff from S-10 and placed him in the SCC cell with Inmate Wilson. (DSMF ¶ 59; PSMF ¶ 19.) Both Plaintiff and Inmate Wilson were in restraint chairs at this time. (DSMF ¶ 60; PSMF ¶ 19.) Defendant then went

10

AO 72A
(Rev.8/8
2)

outside to turn off the water to S-10. (DSMF ¶ 61.) While Defendant was gone, Plaintiff again freed his arm and used it to flood the SCC cell. (DSMF ¶ 62; PSMF ¶ 19.)

When Defendant received word that the SCC cell was also flooded, Defendant and Officer Hudson moved Plaintiff and Inmate Wilson to cell S-3. (DSMF ¶ 66; PSMF ¶¶ 19-20.) S-3 is meant for inmates on suicide watch and thus is outfitted with a camera for observation. (DSMF ¶ 67; PSMF ¶ 21.) There were no sinks or toilets in S-3. (DSMF ¶ 69; PSMF ¶ 21.) Plaintiff and Inmate Wilson remained in their restraint chairs while the officers moved them to S-3. (DSMF ¶ 70.) Officer Hudson secured the restraints on Plaintiff's left arm before moving him. (DSMF ¶ 71.)

AO 72A
(Rev.8/8
2)

Video footage of S-3 shows that, at around 1:17 a.m., Plaintiff once again freed his arm and used it to loosen Inmate Wilson's restraints. (DSMF ¶¶ 76-77; PSMF ¶ 22; Video of S-3 at 1:17:45-1:18:36.) Defendant then received word from the Jail's control operator, Officer Larry Bedford, that Plaintiff was "out of his chair." (DSMF ¶ 72; PSMF ¶ 24.) Officer Bedford did not specify the way in which Plaintiff was "out of his chair." (DSMF ¶ 73.)

Defendant and Officer Hudson responded to S-3 at 1:19 a.m. (DSMF ¶ 74; PSMF ¶¶ 25-26; Video of S-3 at 1:19:35.) Defendant instructed Officer Hudson to have his taser ready before opening the cell door, and to "tase the mother fucker" if Plaintiff was out of his restraint chair. (PSMF ¶ 25; Pl.'s Ex. 1 at 13.) Upon entering, Defendant

AO 72A
(Rev.8/8
2)

approached Plaintiff and tightened the restraint on Plaintiff's left arm. (DSMF ¶ 80; PSMF ¶ 27; Video of S-3 at1:19:44.) Defendant then tased Plaintiff's abdomen multiple times in "drive stun" mode. (DSMF ¶ 81; PSMF ¶ 27; Video of S-3 at 1:19:48-1:19:53.)

After deploying his taser, Defendant leaned close to Plaintiff's face and spoke to him for a period of approximately forty seconds. (Video of S-3 at 1:20:00-1:20-41.) Video footage does not show Defendant's face during this time-frame, nor did it record sound. (Id.) According to Officer Hudson, however, Defendant told Plaintiff in that moment that "he would be better off dead," and that "if [Defendant] could, he would kill Plaintiff." (PSMF ¶ 29; Pl.'s Ex. 1 at 13.) Defendant further said that, if Plaintiff caused

AO 72A
(Rev.8/8
2)

any other problems, Defendant would "tase Plaintiff's ass so bad his mother would not recognize him." (PSMF ¶ 30; Pl.'s Ex. 1 at 48.)  Defendant and Officer Hudson exited S-3 at 1:20 am.  (DSMF ¶ 85; Video of S-3 at 1:20:41.)

Following this incident, Defendant placed the taser cartridges that he and Officer Hudson had fired into a container in the Jail's booking area.   (DSMF ¶ 90.) Defendant also prepared a "use of force" form documenting his decision to tase Plaintiff.   (DSMF ¶ 92.)

Plaintiff later reported Defendant's actions to another employee of the Polk County Sheriff's Office. (PSMF ¶ 34.) Later, at the request of the Polk County Sheriff, Johnny Moats, the Georgia Bureau of Investigation assigned Special Agent Earl Glover ("Agent Glover") to conduct a

AO 72A
(Rev.8/8
2)

criminal investigation into the tasing incident.  (PSMF ¶ 35.)

Agent Glover published his findings in an investigative

report.  (<u>See generally</u> Pl.'s Ex. 1.)

## B.   Procedural Background

Plaintiff filed this action on January 27, 2018.  (Docket

Entry No. 1.)   Defendant filed his Motion for Summary

Judgment on November 28, 2018. (Docket Entry No. 21.)

Plaintiff filed his Motion for Summary Judgment on

December 1, 2018. (Docket Entry No. 25.)   The briefing

process for both Motions is now complete, and the Court

finds this matter ripe for resolution.

AO 72A
(Rev.8/8
2)

## II.  Legal Standard

Federal Rule of Civil Procedure 56(a) allows a court to grant summary judgment where "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears the initial burden of showing the Court that summary judgment is appropriate and may satisfy this burden by pointing to materials in the record.  Jones v. UPS Ground Freight, 683 F.3d 1283, 1292 (11th Cir. 2012).  Once the moving party has supported its motion adequately, the burden shifts to the non-movant to rebut the motion with specific evidence that demonstrates the existence of a genuine dispute for trial.  Id.

16

AO 72A

(Rev.8/8

2)

When evaluating a motion for summary judgment, the Court must view the evidence in the light most favorable to the party opposing the motion, and it must draw all reasonable inferences from the evidence in that party's favor. Morton v. Kirkwood, 707 F.3d 1276, 1280 (11th Cir. 2013); Strickland, 692 F.3d at 1154. The Court also must "resolve all reasonable doubts about the facts in favor of the non-movant." Morton, 707 F.3d at 1280 (internal quotation marks and citations omitted). Further, the Court may not make credibility determinations, weigh conflicting evidence to resolve disputed factual issues, or assess the quality of the evidence presented. Strickland, 692 F.3d at 1154. Finally, the Court does not make factual determinations. Rich, 716 F.3d at 530.

AO 72A
(Rev.8/8
2)

The Court further observes that the standard for summary judgment differs depending on whether the party moving for summary judgment also bears the burden of proof on a relevant issue. As the Third Circuit has observed, a moving party without the burden of proof "has no obligation to produce evidence negating its opponent's case." Nat'l State Bank v. Fed. Reserve Bank of New York, 979 F.2d 1579, 1582 (3d Cir. 1992). Instead, that party "merely has to point to the lack of any evidence supporting the non-movant's claim." Id.

Where the moving party does bear the burden of proof on an issue, however, the movant's showing "must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." Calderone v.

18

United States, 799 F.2d 254, 259 (6th Cir. 1986) (quoting William W. Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 487-88 (1984)). In other words, the moving party's evidence must be so overwhelming or undisputed as to every material fact that it "remove[s] genuine doubt from the issue altogether." Franklin v. Montgomery Cty., Md., Civil Action No. DKC 2005-0489, 2006 WL 2632298, at *5 (D. Md. Sept. 13, 2006) (quoting Hoover Color Corp. v. Bayer Corp., 199 F.3d 160, 164 (4th Cir. 1999)) (alteration in original).

## III. Defendant's Motion for Summary Judgment

Defendant moves for summary judgment on each of Plaintiff's claims, which include: (1) a claim of excessive

19

force under 42 U.S.C. § 1983; (2) a claim of battery under Georgia law; and (3) a claim of intentional infliction of emotional distress under Georgia law. The Court addresses each of these claims and Defendant's arguments in turn.

## A.  § 1983 Claim

Plaintiff has sued Defendant for damages under 42 U.S.C. § 1983.  That federal statute provides:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law [or] suit in equity . . . ."

42 U.S.C. § 1983.

Defendant contends, however, that he is entitled to qualified immunity from Plaintiff's § 1983 claim.  The

AO 72A
(Rev.8/8
2)

doctrine of qualified immunity generally shields government officials from suits for civil damages, so long as they do not violate clearly established federal rights. Morris v. Town of Lexington, Ala., 748 F.3d 1316, 1321 (11th Cir. 2014) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson, 555 U.S. at 231. The "driving force" behind qualified immunity is "to ensure that insubstantial claims against government officials be resolved prior to discovery and on summary judgment if possible." Morris, 748 F.3d at 1322 (internal quotation

AO 72A
(Rev.8/8
2)

marks and citation omitted).

To determine whether an official is entitled to qualified immunity, the Eleventh Circuit applies a two-part analysis: First, the defendant must prove that the allegedly unconstitutional conduct occurred within the scope of his or her discretionary authority. <u>Penley v. Eslinger</u>, 605 F.3d 843, 849 (11th Cir. 2010). At this stage, the Court asks "whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within [his or her] power to utilize." <u>Holloman ex rel. Holloman v. Harland</u>, 370 F.3d 1252, 1265 (11th Cir. 2004).[2]

_____

[2] In making this determination, the Court does not inquire "whether it was within the defendant's authority to commit the allegedly illegal act." <u>Holloman ex rel Holloman</u>, 370

AO 72A
(Rev.8/8
2)

Then, once the defendant shows that he or she acted within his or her discretionary authority, the burden shifts to the plaintiff to demonstrate: (1) that the defendant's conduct violated the plaintiff's constitutional rights and (2) that the constitutional rights at issue were "clearly established when the defendant committed the act complained of." <u>Morris</u>, 748 F.3d at 1322 (internal quotation marks and citation omitted). This inquiry can begin with either prong. <u>Id.</u> at 1322. If the plaintiff fails to make either of these two showings, however, then the government official is immune

---

F.3d at 1266 (internal quotation marks omitted). Instead, the Court must "look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." <u>Id.</u>

AO 72A
(Rev.8/8
2)

from suit. <u>Keating v. City of Miami</u>, 598 F.3d 753, 762 (11th Cir. 2010); <u>see also</u> <u>Smith ex rel. Smith v. Siegelman</u>, 322 F.3d 1290, 1298 (11th Cir. 2003) (finding that defendants were entitled to qualified immunity based on plaintiff's failure to allege constitutional violation).

Here, the Parties do not dispute that Defendant acted within his discretionary authority. The analysis therefore moves to whether Defendant violated Plaintiff's clearly established rights. The Court first addresses whether Defendant did, in fact, violate Plaintiff's rights under the Fourteenth Amendment. It then addresses whether those rights were clearly established at the time of the claimed violation.

AO 72A
(Rev.8/8
2)

## 1.  Constitutional Violation

Plaintiff claims that Defendant violated his right, under the Fourteenth Amendment of the United States Constitution, to be free from excessive force.  To prevail on a claim of excessive force, a pretrial detainee must show that the force used against him or her was "objectively unreasonable."  See Kingsley v. Hendrickson, 135 S.Ct. 2466, 2473 (2015).  The Court must assess a defendant's use of force "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." Id.  This analysis further must account for the "legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained," as well as an official's "need[] to

25

preserve order and discipline and to maintain institutional security." Id. (internal quotation marks and citation omitted).

The Supreme Court has observed that the following considerations may bear on the reasonableness of force: (1) the relationship between the need for the use of force and the amount of force used; (2) the extent of the plaintiff's injury; (3) any effort made by the officer to temper or limit the amount of force; (4) the severity of the security problem at issue; (5) the threat reasonably perceived by the officer; and (6) whether the plaintiff was actively resisting. Id. These factors are not exhaustive or exclusive, and others may be relevant to a particular case. Id.

Incidentally, the Eleventh Circuit applied these same factors to excessive force claims before the Supreme Court

AO 72A
(Rev.8/8
2)

decided Kingsley.    See Danley v. Allen, 540 F.3d 1298, 1307 (11th Cir. 2008) (requiring courts to consider (1) "the need for force," (1) "the relationship between that need and the amount of force used," (3) "the extent of the resulting injury," (4) "the threat to the safety of staff and inmates, (5) "as perceived by the responsible officer on the basis of facts known," and (6) "any efforts made to temper the severity of the forceful response").  Thus, earlier cases from this Circuit remain relevant to the inquiry of excessive force.    See Robinson v. Lambert, No. 18-11033, 2018 WL 5255238, at *5 (11th Cir. Oct. 22, 2018) (applying pre-Kingsley cases and noting that "the factors used [in this Circuit] to assess whether force was excessive were the same").

27

### i. Relationship Between Need for Force and Force Used

Defendant contends that his decision to tase Plaintiff was necessary to "curtail Plaintiff's disruptive and dangerous behavior . . . and restore discipline to the jail." (Def.'s Reply (Docket Entry No. 30) at 5.) He argues that, when balanced against Plaintiff's misbehavior throughout the night, "the need for discipline warranted the force used by [Defendant]." (Id.)

The Court does not agree. A use of force becomes objectively unreasonable whenever it continues past any need for force, such as when a prisoner "has clearly stopped resisting." Danley, 540 F.3d at 1309. Where an officer uses substantial force against a person who "has decided to become compliant, [] has been subdued, [] is otherwise

28

AO 72A
(Rev.8/8
2)

incapacitated – that use of force is excessive." Id.; see also Robinson, 2018 WL 5255238, at *3. Although some force is justified where an inmate refuses repeated commands, further force is excessive once an inmate yields to the officer or is disabled. See Danley, 540 F.3d at 1307-09 (finding that a "short burst of pepper spray is not disproportionate to the need to control an inmate who has failed to obey a jailer's orders," but then concluding that continued force was excessive after the prisoner had stopped resisting).

The Eleventh Circuit applies this same principle to excessive force claims under the Fourth Amendment. The applicable standard for Fourth Amendment claims is also "objective reasonableness." See Graham v. Connor, 490 U.S. 386, 395-96 (1989). In the specific context of tasers,

29

AO 72A
(Rev.8/8
2)

the court has concluded that "unprovoked taser use against a non-hostile and non-violent suspect who has not disobeyed instructions violates that suspect's rights under the Fourth Amendment." <u>Smith v. LePage</u>, 834 F.3d 1285, 1294 (11th Cir. 2016) (internal quotation marks and citation omitted). Use of a taser against "a suspect who has repeatedly ignored police instructions and continues to act belligerently" is justified, however, primarily because "a taser might be preferable to a physical struggle causing harm to the suspect or the officer." <u>Id.</u> (quoting <u>Fils v. City of Aventura</u>, 647 F.3d 1272, 1278 (11th Cir. 2004)).

Here, video recording of the incident shows that Plaintiff was not resisting at any point before Defendant employed his taser. Whatever problems Plaintiff may have caused

AO 72A
(Rev.8/8
2)

before the incident in S-3, and the evidence suggests there were several, Plaintiff was non-aggressive and compliant after Defendant entered his cell. Plaintiff made no aggressive movements or gestures toward the officers, and Defendant does not allege that Plaintiff was disobeying any orders or commands at that time. Although it is true that prison staff had told Defendant that Plaintiff was "out of his chair," and the Court must view these events from Defendant's perspective at the scene, it should have been evident to Defendant upon entering the cell that Plaintiff was seated in his restraint chair and not making hostile movements.

Plaintiff's earlier outbursts do not change this analysis. An inmate does not forfeit the right against excessive force

31

AO 72A
(Rev.8/8
2)

simply because he or she previously misbehaved or disobeyed orders. Rather, <u>Kingsley</u> teaches that an officer's use of force must be, at all times, proportional to the need for such force. Multiple decisions by the Eleventh Circuit have concluded that, where a plaintiff has stopped resisting or has become unable to resist, the need for substantial force also ceases. Thus, regardless of Plaintiff's earlier disruptions, Defendant's use of a taser against an unresisting inmate was disproportionate to the need for force in this case.

### ii. Extent of Injuries

Defendant contends that Plaintiff's injuries from this incident were <u>de minimis</u> and thus cannot support a claim of excessive force. Indeed, Defendant asserts that "the de

32

AO 72A
(Rev.8/8
2)

minimis nature of [Plaintiff's] alleged injury" is "perhaps the strongest factor" weighing against a finding of excessive force.

In support, Defendant cites the Eleventh Circuit's decision in <u>Riggins v. Beseler</u>, which addressed a prison officer's use of a taser in drive-stun mode. 568 F. App'x 850, 853 (11th Cir. 2014). The court found there that the plaintiff had not shown excessive force because, "[o]ther than [the plaintiff's] self-serving statement that he suffered scarring from the taser . . ., he failed to submit any evidence that his injuries were more than de minimis." <u>Id.</u> (citing <u>Bennett v. Parker</u>, 898 F.2d 1530, 1533 (11th Cir. 1990). Other cases also make clear that an inmate must provide more than conclusory allegations of injury and

AO 72A
(Rev.8/8
2)

uncorroborated affidavits. See Bennett, 989 F.2d at 1533-34 ("[The plaintiff's] claim of serious injury is only a conclusory allegation, unsupported by any physical evidence, medical records, or the corroborating testimony of witnesses, and we therefore discount it."); Brown v. Smith, 813 F.2d 1187, 1189 (11th Cir. 1987) ("Since [the plaintiff's] affidavit includes only a most conclusory allegation that his injury was serious, we discount his conclusion . . . .").

Here, Plaintiff has provided more than unsupported allegations. The record includes photos of the burns that Plaintiff sustained from Defendant's taser. (See Pl.'s Ex. 6 (Docket Entry No. 22-6).) Plaintiff thus has not failed, as the inmate in Riggins did, to corroborate his injuries with physical evidence. Furthermore, although the Eleventh

34

AO 72A
(Rev.8/8
2)

Circuit expects inmates to show "some evidence of injury beyond a minimal one," it does not require the plaintiff to "sustain a permanent injury." <u>Bennett</u>, 898 F.2d at 1533.

Defendant appears to argue at points that taser-related injures are always, categorically, <u>de minimis</u> injuries. To accept this argument would be effectively to conclude that taser use can never constitute excessive force. That is plainly not true. <u>See</u> <u>Smith</u>, 834 F.3d at 1294 (holding that "unprovoked taser use against a non-hostile and non-violent suspect . . . violates that suspect's rights") (internal quotation marks and citation omitted). The Court therefore declines to find that tasers are <u>de minimis</u> force as a matter of law. Rather, Plaintiff's evidence of injury, showing multiple burns and scarring across his abdomen, is sufficient

AO 72A
(Rev.8/8
2)

to support his claim of excessive force.

### iii.   Efforts to Temper or Limit Force

Defendant contends that he tempered his use of force against Plaintiff by deploying his taser in drive-stun mode, which is the "least severe" method of taser use. (Def.'s Reply at 7.) As the Court discusses more fully below, drive-stun mode is less intrusive than other methods of deploying a taser. This factor therefore does weigh in Defendant's favor, at least insofar as Defendant did not use the most force of which he was capable. Because the Court concludes that Defendant was not entitled to use substantial force of any kind, however, this finding does not foreclose Plaintiff's claim.

AO 72A
(Rev.8/8
2)

### iv.   Severity of Security Problem & Threat Perceived by the Officer

Taking the fourth and fifth factors together, the Court finds that Defendant's use of force was excessive in relation to the security threat posed by Plaintiff.  Defendant identifies two ways in which Plaintiff, from his perspective at the time, appeared to be a security risk:  First, Plaintiff had caused numerous disruptions throughout the night and already had flooded two cells before being placed in S-3.  Second, Officer Lambert advised Defendant that Plaintiff was "out of his chair" just before the tasing occurred.

Although it appears undisputed that Plaintiff made himself a disciplinary headache throughout Defendant's shift, both by loudly banging on his cell door and by flooding multiple cells, all of these earlier issues were seemingly

AO 72A
(Rev.8/8
2)

under control before the tasing occurred. Plaintiff had ceased making noise by that time, and S-3 did not have running water as Plaintiff's other cells had. Thus, as also discussed above, the Court cannot agree that Plaintiff's earlier outbursts warranted Defendant's use of a taser, or any type of force for that matter.

Defendant did have greater cause for concern, however, based on Officer Bedford's warning that Plaintiff was "out of his chair." Viewing the situation from Defendant's perspective at the time he entered S-3, there was a significant risk that Plaintiff had escaped his restraint chair and could pose a physical danger to others. Defendant and Officer Hudson therefore had ample reason to ready their tasers before entering the cell. Indeed, had

38

either officer deployed their taser as a precautionary measure, in an attempt to disable Plaintiff before he could cause physical harm, such force might have been justified.

Yet that is not what occurred. The evidence instead shows that Defendant entered S-3 without incident, approached Plaintiff, took the time to tighten Plaintiff's restraints, then engaged his taser at close range. Thus, while circumstances would have appeared dangerous when Defendant first received word that Plaintiff was "out his chair," Defendant's subsequent actions show that he did not perceive Plaintiff to be a physical threat.

Indeed, because Defendant only resorted to force after securing Plaintiff's restraint chair, Defendant's choice to tase Plaintiff was gratuitous and, by all appearances, punitive.

39

AO 72A
(Rev.8/8
2)

As the Supreme Court has emphasized, government officials are forbidden from using force against pretrial detainees as a means of punishment. <u>Kingsley</u>, 135 S. Ct. at 2475 ("[P]retrial detainees (unlike convicted prisoners) cannot be punished at all, much less maliciously and sadistically.") (internal quotation marks and citation omitted).

The Court also finds significant, with regard to this factor, that Defendant chose to use his taser in drive-stun mode. A taser has several modes of deployment, each having a different effect. One district court in this Circuit has described a taser's modes in the following way:

> "Probe mode is what many people envision when they think of use of a Taser. In probe mode, two electrically charged probes are shot into a person's body, so that an electric current runs through the entire body. This causes neuromuscular incapacitation. In other words, the

40

AO 72A
(Rev.8/8
2)

person loses control over her own body because her muscles and nerves are entirely occupied with completing the circuit. If an individual is struggling with the police or otherwise presents a danger, the neuromuscular incapacitation can create a window in which the individual will stop resisting and can be secured. Probe mode also causes intense [pain], felt throughout the body. []

In drive-stun mode, [however,] the probes are taken off the Taser so only fixed electrodes remain. The electrodes are able to complete a circuit through the air, showing an arc of lightning-like electricity. When touched to a person's body, the circuit is completed through the top layer of skin and fat, leading to an extremely painful burning sensation . . . . In drive-stun mode, a Taser is "a pain compliance tool with limited threat reduction." [] In other words, because it does not incapacitate an individual, it will not be as effective at ending a struggle, but it can cause an individual to comply with police orders by causing pain . . . .

Finally, three-point mode is the name for when an officer uses a Taser in both probe mode and drive-stun mode at the same time, incapacitating a person and causing her extra pain."

Andrews v. Williams, No. 2:13CV136-MHT, 2015 WL

AO 72A
(Rev.8/8
2)

5735652, at *2 (M.D. Ala. Sept. 30, 2015) (citation omitted).

The court went on to emphasize that, although probe mode

is a "more intrusive and painful experience" than drive-stun

mode, drive-stun mode "does not provide the advantages of

distance and incapacitation, which allow an officer to secure

a suspect without exposing himself to potential injury." Id.

at *6 (citation omitted).

Rather, drive-stun use is a "pain-compliance technique."

Id. The theory behind such techniques appears to be "part

punishment and part threat," achieving its intended effect by

"prodd[ing the subject] into cooperating for fear of receiving

additional pain."[3] Id. The court in Andrews therefore found

---

[3] This characterization of drive-stun mode is consistent with Defendant's own theory of this case. Defendant argues that he was "entitled to use the taser in

that, although "[s]uch techniques have not been addressed by the Eleventh Circuit or the Supreme Court," pain compliance is nonetheless "profoundly troubling as a practice," and "it would seem dangerous to encourage frequent use of such practices." Id. (citing Whitley v. Albers, 475 U.S. 312, 320-21 (1986)).

The Court shares these concerns. For this case, however, the Court need not decide whether drive-stunning or pain compliance are, by their nature, constitutionally suspect practices. It will instead suffice to say that Defendant's choice to use drive-stun mode, as opposed to probe mode, strongly indicates that he did not perceive

_____

drive stun mode to gain compliance, which was effective and stopped Plaintiff's improper behavior." (Def.'s Reply at 8.)

AO 72A
(Rev.8/8
2)

Plaintiff to be an immediate threat to his safety or prison security. Thus, under the analysis of <u>Kingsley</u>, the fourth and fifth factors weigh toward excessive force.

### v. Plaintiff's Resistance

As discussed above, video footage shows that Plaintiff did not physically resist Defendant during the incident in S-3, nor did he make threatening or aggressive movements. Defendant argues that Plaintiff "previously resisted" him, however, by pulling his left arm out of its restraints. (Def.'s Reply at 8.)

The Court cannot agree. When evaluating Defendant's use of force, the Court must view these events using only the knowledge that Defendant had at the time. Defendant may not, any more than Plaintiff, bolster his case through

44

the 20/20 vision of hindsight. Here, at the time Defendant tased Plaintiff, Defendant did not appear to know that Plaintiff had removed his arm from its restraints. Officer Bedford had informed Defendant that Plaintiff was "out of his chair," but Defendant himself concedes that Officer Bedford did not specify what he meant by those words. Defendant therefore cannot rely on Plaintiff's specific actions, taken before Defendant even entered the room, to argue now that Plaintiff "resisted" him.

Furthermore, even if the Court views Plaintiff's earlier conduct as "resistance," the Eleventh Circuit has explained that substantial force becomes excessive where, as here, a person ceases resisting. " See Danley, 540 F.3d at 1309. Footage of S-3 shows that Plaintiff did not remove his arm

AO 72A
(Rev.8/8
2)

from its restraint at any point before Defendant deployed his taser. Thus, assuming that Plaintiff was resisting Defendant by removing his left arm from the restraint chair, all such resistance stopped when Defendant entered the room. After that point, the use of significant force was unconstitutionally excessive.

In summary, upon considering the factors laid out in Kingsley and relevant decisions by the Eleventh Circuit, the Court finds that Defendant violated Plaintiff's constitutional right to be free from excessive force. Defendant wielded a taser against Plaintiff, who was not physically resisting at the time, thereby inflicting significant pain and visible burns. This use of force was objectively unreasonable under the circumstances. Having found a constitutional violation, the

AO 72A
(Rev.8/8
2)

Court now determines whether Plaintiff's rights were clearly established at the time of Defendant's conduct.

## 2. Clearly Established Law

"The relevant, dispositive inquiry in determining whether a right is <u>clearly</u> established is whether it would be <u>clear</u> to a reasonable [individual in the defendant's position] that his conduct was unlawful in the situation he confronted." <u>Morris v. Town of Lexington, Ala.</u>, 748 F.3d 1316, 1322 (11th Cir. 2014) (emphasis in original) (internal quotation marks and citation omitted). Although a plaintiff "need not demonstrate that there is case-law specifically addressing his factual scenario, existing precedent must have placed the statutory or constitutional question beyond debate." <u>Id.</u> (internal quotation marks and citation omitted). A plaintiff can

AO 72A
(Rev.8/8
2)

demonstrate that a right is clearly established in one of three ways:

> "First, [the plaintiff] may show that 'a materially similar case has already been decided.' Second, [the plaintiff] can point to a 'broader, clearly established principle [that] should control the novel facts [of the] situation.' Finally, the conduct involved in the case may 'so obviously violate[] th[e] constitution that prior case law is unnecessary.' "

Id. (some alterations in original) (quoting Terrell v. Smith, 668 F.3d 1244, 1255 (11th Cir. 2012)). To carry this burden, the plaintiff must point to the law "as interpreted at the time by the United States Supreme Court, the Eleventh Circuit, or the [Georgia] Supreme Court." Id.

Defendant contends, and Plaintiff does not appear to dispute, that the facts of this case are not "materially similar" to the facts of any binding decision. Thus, to determine

48

whether Plaintiff's rights were clearly established, the Court must decide whether a "broad statement" of constitutional law applies to this case. <u>Lewis v. City of W. Palm Beach, Fla.</u>, 561 F.3d 1288, 1292 (11th Cir. 2009) (citation omitted). To clearly establish the law in a specific case, a broad principle must apply "with obvious clarity," to the point that every reasonable officer would understand the unlawfulness of his or her conduct. <u>Coffin v. Brandau</u>, 642 F.3d 999, 1015 (11th Cir. 2011) (quoting <u>Vinyard v. Wilson</u>, 311 F.3d 1340, 1351 (11th Cir.2002)).

Plaintiff contends that Defendant's actions clearly violated the Fourteenth Amendment because Defendant used his taser "without any justification" against an unresisting inmate. While recognizing that "obvious clarity"

cases are rare, <u>Coffin</u>, 642 F.3d at 1015, the Court agrees with Plaintiff.

The Eleventh Circuit has maintained consistently that substantial force becomes unjustified once a detainee stops resisting. <u>See</u> <u>Danley</u>, 540 F.3d at 1309 ("When jailers continue to use substantial force against a prisoner who has clearly stopped resisting—whether because he has decided to become compliant, he has been subdued, or he is otherwise incapacitated—that use of force is excessive."); <u>see also</u> <u>Smith</u> 834 F.3d at 1294 ("[U]nprovoked taser use against a non-hostile and non-violent suspect who has not disobeyed instructions violates that suspect's rights . . . .") In the unpublished decision of <u>Robinson v. Lambert</u>, the Eleventh Circuit found this principle well-established and

AO 72A
(Rev.8/8
2)

therefore denied the officer's defense of qualified immunity. 2018 WL 5255238, at *5-6.

Here, video evidence shows that Defendant tased a non-resisting and largely immobilized inmate. Even taking into account the fact that Plaintiff was able to remove his left arm from its restraint, there is simply no indication that Plaintiff threatened or lashed out toward Defendant at any time. Footage of the incident instead demonstrates that Plaintiff remained still and non-aggressive as Defendant approached and tightened his restraints. Thus, the Court finds that a broad principle of constitutional law applies to this case with obvious clarity. Under such circumstances, Defendant is not entitled to summary judgment in his favor on the basis of qualified immunity.

AO 72A
(Rev.8/8
2)

## B.  State Claims

Defendant contends that he is entitled to official immunity from Plaintiff's claims under Georgia law. He also argues that these claims fail on their merits. The Court addresses these arguments in turn.

### 1.  Official Immunity

Georgia's doctrine of official immunity, much like qualified immunity under federal law, "offers public officers and employees limited protection from suit in their personal capacity." Todd v. Brooks, 292 Ga. App. 329, 330, 665 S.E.2d 11, 12 (2008). This immunity protect public agents from individual liability for "discretionary actions taken within the scope of their official authority and done without willfulness, malice, or corruption." Id. "The rationale for

AO 72A
(Rev.8/8
2)

[official] immunity is to preserve the public employee's independence of action without fear of lawsuits and to prevent a review of his or her judgment in hindsight." Id. at 12-13.

To be immune from suit, an official's actions must have been "discretionary" rather than "ministerial." Banks v. Happoldt, 271 Ga. App. 146, 149, 608 S.E.2d 741, 744 (2004). A ministerial act is "one that is simple, absolute, and definite . . . requiring merely the execution of a specific duty." Id. (citation omitted). By contrast, a discretionary act "calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." Id. (citation omitted).

AO 72A
(Rev.8/8
2)

If the actions in dispute were discretionary, then the officer is immune from suit under state law, unless he or she acted "with actual malice or actual intent to cause injury." Selvy v. Morrison, 292 Ga. App. 702, 704, 665 S.E.2d 401, 404 (2008). "[I]n the context of official immunity, actual malice requires a deliberate intention to do wrong," and does not include "reckless disregard for the rights and safety of others." Id. (alteration in original). A deliberate intention to do wrong must be "the intent to cause the harm suffered by the plaintiff[]." Id.

Here, the Parties do not dispute that Defendant's actions were discretionary. Defendant is therefore immune from Plaintiff's state claims, unless he acted with actual malice or actual intent to cause injury.

AO 72A
(Rev.8/8
2)

Defendant contends that "there is no evidence in the record" indicating actual malice or deliberate intent to cause injury. Plaintiff responds that Defendant "verbalize[d] his malicious intent to harm" through threatening statements and thus demonstrated actual malice. The Court agrees with Plaintiff and finds that a genuine issue exists as to Defendant's state of mind.

"[E]vidence demonstrating frustration, irritation, and possibly even anger is not sufficient to penetrate official immunity, nor is proof of ill will, unless the ill will is combined with the intent to do something wrongful or illegal." Selvy, 292 Ga. App. at 706, 665 S.E.2d at 406. When evaluating a claim of excessive force, however, "threatening comments are circumstantial evidence of mental state that can be

AO 72A
(Rev.8/8
2)

considered in determining the intent underlying the use of force." <u>Cockrell v. Sparks</u>, 510 F.3d 1307, 1312 (11th Cir. 2007) (citing <u>Bozeman v. Orum</u>, 422 F.3d 1265, 1272 (11th Cir. 2005)).

In this case, Officer Hudson stated that Defendant made multiple threats and violent statements after tasing Plaintiff. Defendant purportedly told Plaintiff that "he would be better off dead," and that "if [Defendant] could, he would kill Plaintiff." Defendant also allegedly said that, if Plaintiff caused any other problems, Defendant would "tase Plaintiff's ass so bad his mother would not recognize him." A jury readily could conclude from such comments that Defendant's use of force in this case was not only excessive, but also malicious and intentionally unlawful.

AO 72A
(Rev.8/8
2)

Thus, Plaintiff has created a genuine issue of material fact with respect to Defendant's official immunity.

## 2. Merits of the Underlying Claims

### i. Battery

Plaintiff has sued Defendant for battery under Georgia's common law. In Georgia, "any unlawful touching is a physical injury to the person and is actionable." Ellison v. Burger King Corp., 294 Ga. App. 814, 816, 670 S.E.2d 469, 472 (2008) (quoting Newsome v. Cooper-Wiss, Inc., 179 Ga. App. 670, 672, 347 S.E.2d 619, 621 (1986)). A cause of action for battery "can be supported by even minimal touching." Id. (quoting Darnell v. Houston Cty. Bd. of Educ., 234 Ga. App. 488, 490, 506 S.E.2d 385, 388 (1998)).

Given the "relatively low threshold" for proving battery

AO 72A
(Rev.8/8
2)

in Georgia, the Court must find that Plaintiff has produced more than enough evidence to establish an offensive touching. Ellison, 294 Ga. App. at 817, 670 S.E.2d at 472. Defendant subjected Plaintiff to a painful electric shock against his will. The Court also has found, as discussed above, that Defendant's actions violated the Fourteenth Amendment of the United States Constitution and therefore were unlawful. Consequently, Plaintiff has established the elements of battery in Georgia, and the Court cannot grant summary judgment to Defendant on this claim.

### ii. Intentional Infliction of Emotional Distress

Plaintiff also has sued Defendant for intentional infliction of emotional distress under Georgia's common law. To establish such a claim in Georgia, a plaintiff must show that:

58

AO 72A
(Rev.8/8
2)

"(1) the defendant's conduct was intentional or reckless; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the conduct and the emotional distress; and (4) the emotional distress was severe." Cook v. Covington Credit of Georgia, Inc., 290 Ga. App. 825, 828, 660 S.E.2d 855, 858 (2008) (citation omitted).

Defendant contends that Plaintiff's emotional distriss from the tasing incident was not severe enough to support this cause of action. The Court agrees.

The Georgia Court of Appeals has described "severe" emotional distress in the following terms:

> " Emotional distress includes all highly unpleasant mental reactions such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea. It is only where it is extreme that liability arises. The law intervenes only where the distress inflicted is

AO 72A
(Rev.8/8
2)

so severe that no reasonable person could be expected to endure it."

<u>Jones v. Warner</u>, 301 Ga. App. 39, 42–43, 686 S.E.2d 835, 839 (2009). Whether emotional distress is "severe" is a question of law for the court to decide. <u>Id.</u>

Here, Plaintiff alleges "economic damages, severe mental anguish, and emotional and physical distress." (Compl. ¶ 57.) He further claims to have suffered "PTSD type symptoms, including sadness, anxiety, stress, anger, depression, frustration, sleeplessness, nightmares, and flashbacks from his assault." (Id. ¶ 25.) Plaintiff also admitted, however, that he has not received any psychiatric evaluation or treatment since the incident. (Def.'s Ex. B (Docket Entry No. 21-4) ¶ 9.) Such evidence is generally necessary to prove a claim of emotional distress. <u>See</u>

AO 72A
(Rev.8/8
2)

Jones, 301 Ga. App. at 43, 686 S.E.2d at 839 ([B]ased on [the plaintiff's] . . . failure to seek medical or psychiatric treatment for [her] symptoms, [she] could not show that her symptoms were sufficiently severe."); Odem v. Pace Acad., 235 Ga. App. 648, 656, 510 S.E.2d 326, 333 (1998) (dismissing a claim of emotional distress where the plaintiff "sought no professional advice from doctors or counselors and discussed the matter only informally with his minister").

Without belittling the painful symptoms that Plaintiff may indeed suffer from Defendant's conduct, the Court cannot find that Plaintiff has established a claim for intentional infliction of emotional distress under Georgia law. Thus, regardless of whether Defendant should be entitled to official immunity, the Court will grant summary judgment to

AO 72A
(Rev.8/8
2)

Defendant on the merits of this claim.

## IV. Plaintiff's Motion for Summary Judgment

Like Defendant, Plaintiff moves for summary judgment on each of his claims. The Court addresses each of these claims and the defenses to them in turn.

### A. § 1983 Claim

The Court finds that there are no genuine issues of material fact with respect to Plaintiff's § 1983 claim, and Plaintiff is entitled to judgment as a matter of law. Because Plaintiff bears the burden of proving excessive force, he must show that "no reasonable trier of fact could find other than for [him]." Calderone, 799 F.2d at 259. His evidence must "remove genuine doubt from the issue altogether." Franklin, 2006 WL 2632298, at *5. Although this threshold

AO 72A
(Rev.8/8
2)

is demanding and difficult to meet, the Court concludes that Plaintiff has done so in this case.

The facts of this case are largely undisputed. Although the Parties contest whether Defendant's use of force was legally justified, neither side denies the tasing itself or the events leading up to it. Furthermore, prison cameras have recorded this incident and placed most of the key facts beyond reasonable dispute. See Scott v. Harris, 550 U.S. 372, 380-381 (2007) (holding that courts may not, at summary judgment, view the facts in a light that is "blatantly contradicted" by video evidence). Where there is no dispute as to any material fact, as here, whether an officer's conduct amounted to excessive force becomes a question of law for the Court. The Court has resolved that legal question above, in connection with Defendant's Motion for Summary Judgment.

63

Thus, the Court finds that Plaintiff has removed genuine doubt from this case. No reasonable jury could find other than for Plaintiff, and the Court will grant summary judgment to Plaintiff on his claim of excessive force.

## B. State Claims

### 1. Official Immunity

The Court finds that a genuine issue exists as to whether Defendant is entitled to official immunity. To win summary judgment on this issue, Plaintiff must demonstrate beyond all reasonable dispute that Defendant acted with actual malice or actual intent to cause injury. Plaintiff has not made that showing here.

As discussed above, Plaintiff offers evidence that Defendant made multiple threatening comments at the time

AO 72A
(Rev.8/8
2)

of the tasing. These comments would support a jury's finding that Defendant used his taser maliciously or with an intention to cause harm. They do not, however, require such a finding. The Court has determined above that Defendant's actions were objectively unreasonable, but that conclusion does not place Defendant's subjective state of mind beyond reasonable doubt.

Based on the evidence, a jury could find that Defendant's use of force, though out of proportion to the need for such force, was not malicious or solely intended to injure Plaintiff. At the time of the incident, Defendant was responding to a warning that Plaintiff was "out of his chair." Plaintiff also had been disruptive and rebellious at various points throughout the night. Given these circumstances, a

65

reasonable trier of fact could conclude that Defendant's actions, though excessive and perhaps fueled by anger, were not undertaken with actual malice. The Court therefore cannot grant summary judgment to Plaintiff on the issue of official immunity.

## 2. Merits of the Underlying Claims

### i. Battery

The Court finds that Plaintiff has placed the merits of his battery claim beyond reasonable dispute. To establish battery under Georgia law, Plaintiff must prove an unlawful and offensive touching. As discussed above, in connection with Defendant's Motion for Summary Judgment, Plaintiff provides ample and undisputed evidence that Defendant subjected Plaintiff to painful and offensive contact with a

AO 72A
(Rev.8/8
2)

taser.   Furthermore, the Court has concluded that Defendant's taser use was unconstitutional and therefore unlawful.  As such, there is no genuine issue in this case as to the elements of battery.  Thus, although the question of Defendant's official immunity remains, the Court will grant summary judgment to Plaintiff on the underlying merits of his battery claim.

### ii.   Intentional Infliction of Emotional Distress

As discussed above, in connection with Defendant's Motion for Summary Judgment, Plaintiff has failed to support his claim for intentional infliction of emotional distress. Plaintiff offers no evidence sufficient to find that he suffered "severe" emotional distress from this incident.  Accordingly, the Court will dismiss Plaintiff's claim for emotional distress

67

AO 72A
(Rev.8/8
2)

and deny Plaintiff's Motion for Summary Judgment with respect to it.

## V. Summary

To summarize, the Court finds as a matter of law that Defendant violated Plaintiff's right, under the Fourteenth Amendment of the United States Constitution, to be free from excessive force. It further finds that Plaintiff's rights were clearly established at the time of the violation. Thus, Defendant is not entitled to qualified immunity and is liable to Plaintiff under 42 U.S.C. § 1983. Notwithstanding the Court's ruling on liability, however, a jury still must determine the amount of Plaintiff's damages.

The Court finds as a matter of law that Plaintiff has failed to support his claim for intentional infliction of

AO 72A
(Rev.8/8
2)

emotional distress, and it will dismiss that claim.

The Court finds as a matter of law that Plaintiff has established the elements of his claim for battery under Georgia, and he is entitled to summary judgment on the merits of that claim. Genuine issues of material fact remain, however, with respect to whether Defendant is entitled to official immunity from Plaintiff's battery claim.

## VI.  Conclusion

ACCORDINGLY, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion for Summary Judgment [21].

The Court **GRANTS** the Motion with respect to Plaintiff's emotional distress claim under Georgia law.

The Court **DENIES** the Motion with respect to Plaintiff's

AO 72A
(Rev.8/8
2)

claim of excessive force under § 1983, with respect to the issue of official immunity, and with respect to Plaintiff's battery claim under Georgia law.

The Court also **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion for Summary Judgment [25].

The Court **GRANTS** the Motion with respect to Defendant's liability under § 1983, and with respect to the merits of Plaintiff's battery claim under Georgia law. A jury must determine the amount of Plaintiff's damages.

The Court **DENIES** the Motion with respect to the issue of official immunity, and with respect to Plaintiff's emotional distress claim under Georgia law.

The Court **ORDERS** the Parties to file their proposed consolidated pretrial order **WITHIN THIRTY (30) DAYS** after

AO 72A
(Rev.8/8
2)

the date of this Order.  Unless the Court orders otherwise, all Motions in Limine are due **BY NO LATER THAN FOURTEEN (14) DAYS** prior to the date on which the trial of this case is scheduled to begin.  The Court will not consider untimely filed Motions in Limine unless a party can show good cause for the late filing.

IT IS SO ORDERED, this the 24th day of January, 2019.

_____
SENIOR UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/8
2)